UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALIK FLOWERS, | : |
| Plaintiff, | : Civ. No. 18-8315 (PGS)(DEA) |
| v. | : |
| SCO B. WHEELER, et al., | : **OPINION** |
| Defendants. | : |

**PETER G. SHERIDAN, U.S.D.J.**

I. INTRODUCTION

Plaintiff, Malik Flowers ("Plaintiff"), is proceeding with an amended civil rights complaint ("Amended Complaint") pursuant to 42 U.S.C. § 1983 against Defendants Brian Wheeler, Daniel Lett-Brown, and Kevin Brady (hereinafter "Defendants"). (ECF No. 24.) Presently pending before this Court is Defendants' motion for summary judgment (ECF No. 78), Plaintiff's response (ECF No. 83), and Defendants' reply (ECF No. 86). For the following reasons, the motion for summary judgment is granted.

II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is currently confined in Northern State Prison, Newark, New Jersey. At the time of the events relevant here, Plaintiff was confined at New Jersey State Prison ("NJSP"), Trenton, New Jersey. (*See* ECF No. 24, ¶ 7.) Plaintiff filed his

initial complaint in Mercer County Superior Court, which Defendants removed to this Court on April 25, 2018. (ECF No. 1.) Plaintiff alleged Defendants engaged in "deceptive practices" while he was confined at NJSP. (*Id.* ¶ 1.)

On September 27, 2018, the Court granted Defendants' first motion to dismiss and dismissed the complaint without prejudice. (ECF No. 17.) On April 29, 2019, the Court accepted Petitioner's Amended Complaint (ECF No. 24) for filing and dismissed Plaintiff's allegations that Defendants interfered with his access to the courts by seizing and destroying his legal material. (ECF No. 23.) The Court proceeded the remainder of the Amended Complaint. (*Id.*) Plaintiff filed a motion for a temporary restraining order and a preliminary injunction on June 5, 2019. (ECF No. 29.) Defendants subsequently filed a second motion to dismiss and an opposition to Plaintiff's motion for a temporary restraining order. (ECF No. 30.) Following oral argument, the Court dismissed Plaintiff's claims against Defendants in their official capacity and for injunctive relief. (*See* ECF Nos. 36, 37.) The Court also found Plaintiff failed to raise a claim against the State of New Jersey and the New Jersey Department of Corrections. (ECF No. 36 and 7-8.) The Court proceeded only Plaintiff's retaliation claims against Defendants. (*See* ECF Nos. 36, 37.)

On January 11, 2021, Defendants filed their third motion to dismiss. (ECF No. 56.) The Court found that Plaintiff failed to comply with certain discovery demands and limited Plaintiff's case "solely to whether there is proof regarding three incidents

of retaliation, alleged to have occurred during the 60-day time period of August 1, 2017 through September 30, 2017 identified by Plaintiff." (ECF No. 64 at 2.)

Plaintiff's Amended Complaint raises a First Amendment retaliation claims against Defendants. (ECF No. 24.) Specifically, Plaintiff claims that Defendants 1) interfered with his use of the telephones, 2) interfered with his legal mail, and 3) threatened him as retaliation for filing inmate grievances and this civil rights suit. (*See generally id.*)

Plaintiff testified at his deposition that in August 2017, he submitted an inmate grievance regarding Defendants reducing inmates shower and telephone time. (ECF No. 78-3, Pl. Depo. at 26:14 to 30:3.) Plaintiff claims following the filing of that grievance, Defendant Wheeler delivered Plaintiff's legal mail to the wrong inmates on two occasions. (ECF No. 78-2, Def. Stat. of Mat. Facts ("DSOMF") ¶ 15.) Plaintiff testified that the inmates returned the legal mail to Plaintiff on both occasions. (*Id.*) Plaintiff also testified that during the time period when his two pieces of legal mail were misdelivered, Plaintiff also received numerous pieces of properly delivered legal mail. (*Id.* ¶ 16.) Plaintiff filed a grievance regarding his misdelivered mail. (*Id.* ¶ 17.)

Plaintiff also claims that following the filing of his misdelivered mail grievance, "Defendants Wheeler and Lett-Brown changed the telephone policy on the housing unit adversely affecting all of the inmates on the unit, which created an

3

extremely hostile environment." (Pl. Depo. at 33:3 to 34:12.) Plaintiff claims that Defendant Lett-Brown pulled the phone cord out of the wall while Plaintiff was speaking with a family member. (DSOMF ¶ 18.) Plaintiff testified at his deposition that Defendant Wheeler told him he would not be allowed to use the telephone and told another inmate not to provide Plaintiff with the phone. (*Id.* ¶ 19.) Plaintiff alleges that Defendants Wheeler and Lett-Brown cut off Plaintiff's use of the telephone early. (*Id.* ¶ 20.) Plaintiff filed a grievance regarding the incident where the phone cord was pulled out of the wall. (*Id.* ¶ 21.)

Finally, Plaintiff claims that after filing his initial complaint in this matter, Plaintiff was at a kiosk when Defendant Wheeler approached him in a threatening manner. (Pl. Depo. at 67:8-13.) Plaintiff testified at his deposition Defendant Wheeler stated "so, you filed a lawsuit against me, huh?" and then stated "well, you know I don't have no 20 or $25,000 to get you. Where the f*ck you think I'm going to get that from?" (*Id.* at 68-3-7.) Plaintiff claims that this interaction took place at a prison kiosk and Defendant Wheeler said "you can write it on the kiosk if you want to. I don't give a f*ck about that." (*Id.* at 68:19-20.) Plaintiff alleges that Defendant Wheelers' conduct and tone were threatening, although Defendant Wheeler did not threaten physical harm. (DSOMF ¶24.)

Defendants filed the instant motion for summary judgment arguing for dismissal of Plaintiff's Amended Complaint. (ECF No. 78.) Plaintiff filed his

4

opposition to Defendants' motion for summary judgment (ECF No. 83) and Defendants filed a reply (ECF No. 86.) On December 5, 2022, the Court issued a notice pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and provided the parties with an opportunity to submit supplemental briefing on the issue of exhaustion. (ECF No. 88.) Defendants filed a supplemental brief regarding exhaustion (ECF No. 89) and Plaintiff filed a response (ECF No. 90).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents

5

. . ., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for

6

trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Defendants argue they are entitled to summary judgment as to Plaintiff's retaliation claims because Defendants did not subject Plaintiff to any adverse actions. (ECF No. 78-1 at 25-37.)

Prison officials may not interfere with a prisoner's exercise of First Amendment rights unless interference is reasonably related to a legitimate penological interest, nor may prison officials retaliate against a prisoner for exercising his First Amendment rights. *See Turner v. Safley*, 482 U.S. 78, 90 (1987). An incarcerated plaintiff pleads a claim for retaliation by alleging that "(1) he engaged in constitutionally protected conduct[,] (2) he suffered an adverse action[,] and (3) the constitutionally protected conduct was a substantial or motivating factor for the adverse action." *Brant v. Varano*, 717 F. App'x 146, 149 (3d Cir. 2017); *see also Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001). An "adverse action" is one that is ". . . sufficient 'to deter a person of ordinary firmness' from exercising his constitutional rights." *Brant*, 717 F. App'x at 149 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).

7

A prisoner's ability to file grievances and lawsuits against prison officials is a constitutionally protected activity for purposes of a retaliation claim. *See Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

Defendants do not dispute that Plaintiff was engaged in the constitutionally protected First Amendment activity of filing grievances. Nor do they dispute that Plaintiff's constitutionally protected conduct was a substantial or motivating factor for the adverse action. Defendants only challenge whether Plaintiff was subjected to adverse action, and the Court limits its analysis accordingly.

A prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Rauser*, 241 F.3d at 333 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his [constitutional] rights." *Id.* (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000). The retaliatory act may be actionable even though the act, standing alone, does not transgress the constitution. *Allah*, 229 F.3d at 224. Moreover, the test for adverse action is objective, not subjective, and whether the plaintiff was actually deterred by the defendant's retaliatory acts is not dispositive. *See Citizens for a Better Lawnside, Inc. v. Bryant*, Civ. No. 05-4286(RBK), 2007 WL 1557479, at \*5–6 (D.N.J. May 24, 2007). Stated differently, the defendant does not escape liability

simply because his retaliatory acts failed to deter the plaintiff from exercising constitutional rights. The proper focus is whether a person of "ordinary firmness" would have been deterred. *See Brooks v. Smith*, Civ. No. 3:04-CV-2680, 2007 WL 3275266, at *9 (M.D. Pa. Nov. 6, 2007) (discussing prisoner's claim for retaliatory placement in SHU).

    *1. Interference with Legal Mail*

With respect to Plaintiff claims that Defendant Wheeler retaliated against him by interfering with his legal mail, Defendants argue that two pieces of legal mail being misdelivered among numerous other pieces of legal mail that were properly delivered is not conduct that would deter a person of reasonable firmness from engaging in constitutional protected activities. (ECF No. 78-1 at 28.)

Plaintiff alleges on two occasions Defendant Wheeler delivered a piece of Plaintiff's legal mail to another inmate. (DSOMF ¶ 15.) Plaintiff claimed that both times this happened, the other inmates brought the piece of mail to Plaintiff. (*Id.*) Plaintiff acknowledged that around the same time that these pieces of legal mail were misdelivered, Plaintiff received numerous pieces of properly delivered legal mail. (*Id.* ¶ 16.)

Plaintiff has not provided evidence to show that the two occasions Defendant Wheeler delivered Plaintiff's legal mail to the wrong inmate was sufficient to show an adverse action necessary to meet the second prong (adverse action) above.

9

Determination of this second factor is a fact-sensitive analysis. *Allah*, 229 F.3d at 225. The Third Circuit has held that the following actions were sufficient to establish adversity: several months in disciplinary confinement; denial of parole, financial penalties, and transfer to an institution whose distance made regular family visits impossible; and placement in administrative segregation that severely limited access to the commissary, library, recreation, and rehabilitative programs. *Mitchell*, 318 F.3d at 530; *Rauser*, 241 F.3d at 333; *Allah*, 229 F.3d at 225–26.

Plaintiff testified at his deposition that two pieces of mail were misdelivered approximately one month apart to the wrong inmate and that during the same time Plaintiff received numerous properly delivered pieces of legal mail. (Pl. Depo. at 17:8 to 23:25.) Plaintiff has not presented evidence to show that the inmates read his legal mail or that there was any legal consequence from the delivery of his mail to the wrong inmate. Plaintiff does not provide evidence in the record that these inmates delayed delivery of Plaintiff's mail to him once they improperly received it. Plaintiff has not presented any evidence that would cause these two incidents of his legal mail being delivered incorrectly, which Plaintiff admits took place a month apart, to rise to the level of an adverse action. *See Hardwick v. Packer*, 546 F. App'x 73, 77 (3d Cir. 2013) (finding that defendant did "unspecified things to his food, delivered his mail a few hours late, and smiled at him vindictively" was insufficient to show an adverse action"); *Burgos v. Canino*, 358 F. App'x 302, 307 (3d Cir.2009) (urinalysis,

10

harassment, threats, temporary inconveniences, single incident of food tampering, and denial of recreation did not rise to level of adverse action against prisoner); *see also Toolasprashad v. Williams*, 2009 WL 5103185, at *3 (D.N.J. Dec. 17, 2009) (holding that 63-day delay in receipt of legal mail not sufficient to establish adverse action absent injury); *Jordan v. Wetzel*, 2019 WL 1382512, at *5 (W.D.Pa. March 27, 2019) ("mere delay of less than two months [of legal mail] is not sufficient to establish an adverse action for purposes of stating a retaliation claim.")

Based on the foregoing, Plaintiff has failed to adequately present evidence to show his legal mail allegations rise to the level of an adverse action required to show a claim of retaliation. Therefore, Defendants' motion for summary judgment is granted regarding this issue and this claim is dismissed.

2. *Verbal Threat*

Regarding Plaintiff's claim that Defendant Wheeler verbally threaten him, Defendants argue that Defendant Wheeler's alleged verbal threat would not deter a person of ordinary firmness from exercising their constitutional right. (ECF No. 78-1 at 36.) Defendant argues that threats alone do not constitute retaliation. (*Id.*)

Plaintiff alleges that Defendant Wheeler approached him after Plaintiff filed his complaint in this matter, and stated "Well, you know I don't have no 20 or $25,000 to get you. Where the f*ck you think I'm going to get that from?" (DSOMF ¶ 22, citing Pl. Depo. at 68:5-7.) While Defendant Wheeler was speaking to Plaintiff

11

about his complaint, Plaintiff was at the kiosk filing a grievance. (*Id.* ¶23.) Defendant Wheeler stated to Plaintiff, "You can write on the kiosk if you want to. I don't give a fuck about that." (*Id.*, citing Pl. Dep. 68:9-20.) Plaintiff admitted at his deposition that Defendant Wheeler did not say he was physically going to hurt Plaintiff. (Pl. Depo. at 71:11-22.) However, Plaintiff testified at his deposition that Defendant Wheeler's actions and his voice were in a "threatening tone." (*Id.* at 71:24-25.)

      Plaintiff's retaliation claim fails to the extent that it is based on verbal harassment, as the harassment alleged is not a sufficiently adverse action to support a retaliation claim. Verbal harassment may be sufficiently adverse to support a retaliation claim if the plaintiff has been subjected to "an entire campaign of harassment which though trivial in detail may have been substantial in gross." *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000). But isolated incidents of verbal retaliation were a non-recurring incident and are not sufficiently adverse actions to support a retaliation claim. *See Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) (noting that isolated verbal threats do not constitute retaliation); *see Green v. Wetzel*, 2019 WL 1426955, at *8 (W.D. Pa. Mar. 29, 2019) ("Because verbal threats and comments are not adverse actions, Santos' sarcastic comments during Plaintiff's meeting are not actionable") (citing *Chruby v. Kowaleski*, 534 Fed. App'x. 156, 161 (3d Cir. 2013)). Plaintiff's allegations that Defendant Wheeler used a threatening tone when telling Plaintiff that he did not have $25,000 to resolve the

litigation is insufficient to show an adverse action as required to state a retaliation claim. As such, a reasonable finder of fact could not conclude that Plaintiff suffered an adverse action when measured against the applicable legal standard. Therefore, Defendants' motion to dismiss will be granted as to this issue.

*3. Telephone Access*

Regarding Plaintiff's allegations that Defendants Wheeler and Lett-Brown stopped him from using the telephone in retaliation for filing grievances, Defendants argue Plaintiff cannot show these actions raise to the level of an adverse action. (ECF No. 78-1 at 30-32.)

Plaintiff alleges that on several occasions, Defendants Wheeler and Lett-Brown prevented Plaintiff from using the telephone in retaliation for filing grievances. (DSOMF ¶ 18-20.) Plaintiff testified at his deposition that on one occasion, Defendant Wheeler told him he would not be allowed to use the telephone and told another inmate not to provide Plaintiff with the phone. (DSOMF ¶ 19, citing Pl. Depo. at 37:24 to 38 4.) Plaintiff also alleged that on other occasions, Defendants Wheeler and Lett-Brown cut off Plaintiff's phone time at 8:00 instead of 8:30. (DSOMF ¶ 20, citing Pl. Depo. 33:23 to 34:1.) Plaintiff testified that on another occasion Defendant Lett-Brown pulled the phone cord out of the wall while the Plaintiff was speaking to his aunt. (DSOMF ¶ 18, citing Pl. Depo. at 12:25 to 13:2, 38:24 to 39:5.)

Actions deemed sufficiently adverse to sustain a retaliation claim in the prison context are those such as being placed in disciplinary confinement or administrative segregation; denied parole; transferred to an institution whose distance made regular family visits impossible; suffering some sort of financial penalty; or being severely limited access to the commissary, library, recreation, and rehabilitative programs. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir.2012), citing *Mitchell*, 318 F.3d at 530; *Rauser*, 241 F.3d at 333. In *Allah*, the Third Circuit found adverse action when the prisoner had been placed in administrative segregation, which resulted in "reduced access to phone calls, reduced access to the commissary, reduced access to recreation, confinement in his cell for all but five hours per week, denial of access to rehabilitative programs and, significantly, inadequate access to legal research materials and assistance." 229 F.3d at 225. The Third Circuit has also found where a plaintiff was denied opportunity to telephone family for a full year was enough to show an adverse action. *Montgomery v. Ray*, 145 F. App'x 738, 741 (3d Cir. 2005)

Plaintiff does not allege that he was cut off from all contact with the outside nor does Plaintiff allege that he was completely denied use of the telephone. Rather, Plaintiff alleges that Defendants created their own policy reducing the amount of telephone time available to Plaintiff and on one occasion they abruptly ended Plaintiff's telephone call. This action does not resemble to cases in which the Third Circuit found adverse action. Unlike the plaintiff in *Allah* whose reduced telephone

14

access was coupled with administrative segregation that resulted in reduced access to the commissary, reduced access to recreation, confinement in his cell for all but five hours per week, denial of access to rehabilitative programs and, significantly, inadequate access to legal research materials and assistance, Plaintiff's claim here involved a temporary reduction in telephone time.

Plaintiff testified at his deposition that "when you start creating your own policies, that's when you start cr[e]ating a hostile environment[] within the tier or wherever . . . because now you get rebellion[n] from the inmates . . . everybody wants to know why you do this . . . if there is a certain person that you targeting . . . so you cause a hostile environment to that person." (Pl. Depo. at 34:3-12.) Plaintiff's reply brief argues that Defendants attempted to put other inmates against Plaintiff with the altered telephone policy, creating a hostile environment. While Plaintiff alleges Defendants attempted to create a hostile environment, he fails to provide evidence regarding if any inmates actually acted hostile towards Plaintiff. Plaintiff does not allege any specific facts regarding any inmates or their treatment towards Plaintiff. More importantly, Plaintiff fails to provide evidence of record to show a hostile environment amongst his fellow inmates. At summary judgment, the allegations in a plaintiff's brief do not create a dispute as to material issues of fact. *Orsatti v. N. J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the

allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case."). Plaintiff has failed to point to evidence of record that would cause his brief reduction in telephone time to rise to the level of an adverse action to support a retaliation claims. Therefore, Defendants are also entitled to summary judgment on this portion of Plaintiff's retaliation claim.

## V.  CONCLUSION

For the reasons expressed above, the Court will grant Defendants' motion for summary judgment (ECF No. 78) and will dismiss Plaintiff's sole remaining claims of retaliation. An appropriate order follows.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.
